CHAD A. READLER
Acting Assistant Attorney General
Civil Division

JOHN W. HUBER
United States Attorney

ANTHONY J. COPPOLINO
Deputy Director
Federal Programs Branch

STEPHEN M. PEZZI
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue NW
Washington, DC 20530
Phone (202) 305-8576; Fax (202) 616-8470
Email: stephen.pezzi@usdoj.gov
D.C. Bar No. 995500

*Attorneys for the United States of America*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

JOHN FITISEMANU, *et al.*,

     Plaintiffs,

        v.

UNITED STATES OF AMERICA, *et al.*,[1]

     Defendants.

Case No. 1:18-cv-00036-CW

**DEFENDANTS' MOTION TO DISMISS
OR, IN THE ALTERNATIVE,
CROSS-MOTION FOR
SUMMARY JUDGMENT**

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Secretary of State Michael R. Pompeo is automatically substituted as a defendant, in his official capacity, for former Acting Secretary of State John J. Sullivan (who himself had previously been automatically substituted for former Secretary of State Rex W. Tillerson, *see* Joint Mot. to Set Briefing Schedule, ECF No. 40, ¶ 2 n.1).

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 1

RESPONSE TO PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS ......... 6

LEGAL STANDARD..................................................................................................... 8

ARGUMENT.................................................................................................................. 9

I.    THE TEXT AND STRUCTURE OF THE CONSTITUTION FORECLOSE
      PLAINTIFFS' INTERPRETATION OF THE CITIZENSHIP CLAUSE. ...................... 10

II.   PLAINTIFFS' INTERPRETATION OF THE CITIZENSHIP CLAUSE IS
      INCONSISTENT WITH OVER A CENTURY OF HISTORICAL PRACTICE
      AND PRECEDENT.................................................................................................. 12

      A.    Plaintiffs' interpretation is inconsistent with the *Insular Cases*. .......................... 13

      B.    Plaintiffs' interpretation is inconsistent with settled historical practice. .............. 16

III.  EVERY COURT OF APPEALS TO CONSIDER THE QUESTION HAS
      AGREED THAT UNINCORPORATED TERRITORIES ARE NOT "IN THE
      UNITED STATES" FOR PURPOSES OF THE CITIZENSHIP CLAUSE................... 19

IV.   PLAINTIFFS' REMAINING ARGUMENTS LACK MERIT. ...................................... 21

V.    THE COURT NEED NOT CONSIDER WHETHER BIRTHRIGHT
      CITIZENSHIP IS A FUNDAMENTAL RIGHT FOR PURPOSES OF THE
      TERRITORIAL INCORPORATION DOCTRINE. ...................................................... 26

CONCLUSION............................................................................................................... 29

# TABLE OF AUTHORITIES

## CASES

*Afroyim v. Rusk,*
387 U.S. 253 (1967) ................................................................................................ 24

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) .................................................................................................. 9

*Armstrong v. United States,*
182 U.S. 243 (1901) ................................................................................................ 13

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009) .................................................................................................. 8

*Balzac v. Porto Rico,*
258 U.S. 298 (1922) ................................................................................................ 16

*Barber v. Gonzales,*
347 U.S. 637 (1954) ........................................................................................... 17, 21

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) .................................................................................................. 8

*Bonidy v. U.S. Postal Serv.,*
790 F.3d 1121 (10th Cir. 2015) .............................................................................. 23

*Boumediene v. Bush,*
553 U.S. 723 (2008) .......................................................................................... *passim*

*Commonwealth of the N. Mariana Islands v. Atalig,*
723 F.2d 682 (9th Cir. 1984) .................................................................................. 28

*De Lima v. Bidwell,*
182 U.S. 1 (1901) .................................................................................................... 13

*Dooley v. United States,*
182 U.S. 222 (1901) ................................................................................................ 13

*Dorr v. United States,*
195 U.S. 138 (1904) ........................................................................................... 13, 27

*Downes v. Bidwell,*
182 U.S. 244 (1901) .......................................................................................... *passim*

*Dullmaier v. Xanterra Parks & Resorts*,
883 F.3d 1278 (10th Cir. 2018) ............................................................... 9

*Eche v. Holder*,
694 F.3d 1026 (9th Cir. 2012), *cert. denied*, 570 U.S. 904 (2013).......................... 20

*Elk v. Wilkins*,
112 U.S. 94 (1884)........................................................................ 10, 25

*Garcia v. United States*,
469 U.S. 70 (1984)............................................................................ 24

*Hawaii v. Mankichi*,
190 U.S. 197 (1903)........................................................................... 13

*In re Chung Fat*,
96 F. 202 (D. Wash. 1899)..................................................................... 12

*Inglis v. Trustees of the Sailor's Snug Harbour in the City of New York*,
28 U.S. (3 Pet.) 99 (1830)..................................................................... 24

*Jackman v. Rosenbaum Co.*,
260 U.S. 22 (1922)............................................................................ 18

*King v. Morton*,
520 F.2d 1140 (D.C. Cir. 1975)................................................................ 28

*Lacap v. INS*,
138 F.3d 518 (3d Cir. 1998).................................................................. 19

*Licudine v. Winter*,
603 F. Supp. 2d 129 (D.D.C. 2009)............................................................ 20

*Loughborough v. Blake*,
18 U.S. (5 Wheat.) 317 (1820)................................................................ 23

*Miller v. Albright*,
523 U.S. 420 (1998)........................................................................ 2, 21

*Nikoi v. Attorney Gen. of U.S.*,
939 F.2d 1065 (D.C. Cir. 1991)................................................................ 24

*Nolos v. Holder*,
611 F.3d 279 (5th Cir. 2010) ................................................................. 19

*Phillips v. Payne*,
    92 U.S. 130 (1875) ............................................................................................. 23

*Posada de Puerto Rico Assocs. v. Tourism Co. of Puerto Rico*,
    478 U.S. 328 (1986) ........................................................................................... 26

*Puerto Rico v. Sanchez Valle*,
    136 S. Ct. 1863 (2016) ......................................................................................... 4

*Rabang v. Boyd*,
    353 U.S. 427 (1957) ........................................................................................... 21

*Rabang v. INS*,
    35 F.3d 1449 (9th Cir. 1994), *cert. denied*, 515 U.S. 1130 (1995) .............. 19, 22, 27

*Reid v. Covert*,
    354 U.S. 1 (1957) .......................................................................................... 16, 27

*Shively v. Bowlby*,
    152 U.S. 1 (1894) ............................................................................................... 10

*Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*,
    165 F.3d 1321 (10th Cir. 1999) ........................................................................... 9

*Slaughter-House Cases*,
    83 U.S. (16 Wall.) 36 (1872) ....................................................................... 22, 23

*Smith v. United States*,
    561 F.3d 1090 (10th Cir. 2009) ........................................................................... 8

*Tafflin v. Levitt*,
    493 U.S. 455 (1990) ........................................................................................... 11

*Torres v. Puerto Rico*,
    442 U.S. 465 (1979) ..................................................................................... 15, 16

*Tuaua v. United States*,
    No. 13-5272 (D.C. Cir. Oct. 2, 2015) ............................................................... 19

*Tuaua v. United States*,
    136 S. Ct. 2461 (2016) .................................................................................... 4, 19

*Tuaua v. United States*,
    788 F.3d 300 (D.C. Cir. 2015), *cert. denied*, 136 S. Ct. 2461 (2016) .............. *passim*

*Tuaua v. United States*,
   951 F. Supp. 2d. 88 (D.D.C. 2013), *aff'd*, 788 F.3d 300 (D.C. Cir. 2015) ........................... 4, 19

*United States v. Verdugo-Urquidez*,
   494 U.S. 259 (1990) ........................................................................................ 13

*United States v. Wong Kim Ark*,
   169 U.S. 649 (1898) ................................................................................... 22, 24

*Valmonte v. INS*,
   136 F.3d 914 (2d Cir. 1998), *cert. denied*, 525 U.S. 1024 (1998) ............................... 19, 22, 27

*Walz v. Tax Comm'n of City of New York*,
   397 U.S. 664 (1970) ........................................................................................ 18

**STATUTES**

8 U.S.C. § 1101 .......................................................................................... 2, 10, 21

8 U.S.C. § 1401 .................................................................................................. 2

8 U.S.C. § 1402 .................................................................................................. 2

8 U.S.C. § 1403 .................................................................................................. 2

8 U.S.C. § 1404 .................................................................................................. 2

8 U.S.C. § 1405 .................................................................................................. 2

8 U.S.C. § 1406 .................................................................................................. 2

8 U.S.C. § 1407 .................................................................................................. 2

8 U.S.C. § 1408 ............................................................................................... 2, 5

8 U.S.C. § 1409 .................................................................................................. 2

48 U.S.C. § 1661 ................................................................................................. 3

48 U.S.C. § 1662 .............................................................................................. 2, 3

48 U.S.C. § 1801 ................................................................................................. 2

Act of Feb. 25, 1927, ch. 192, 44 Stat. 1234 ............................................................... 18

Act of Feb. 20, 1929, ch. 281, 45 Stat. 1253 ................................................................. 3

Act of Mar. 24, 1976, Pub. L. No. 94-241, 90 Stat. 263 .................................................. 2

Autonomy Act, ch. 416, 39 Stat. 546 ........................................................................... 17

Organic Act of 1917 (Jones Act), ch. 145, 39 Stat. 953 ................................................ 17

Organic Act of Guam, ch. 512, 64 Stat. 384-85 ........................................................... 17

Nationality Act of 1940, 54 Stat. 1139 ......................................................................... 17

Treaty of Paris, Dec. 10, 1898, U.S.-Spain, Art. II, 30 Stat. 1755................................. 17

Treaty of Paris, Dec. 10, 1898, U.S.-Spain, Art. IX, 30 Stat. 1759 ............................... 17

Tripartite Convention of 1899, Dec. 2, 1899, Art. II, 31 Stat. 1879............................... 3

## REGULATIONS

Exec. Order No. 10,264, 3 C.F.R. 447-48 (Supp. 1951)................................................. 3

## RULES

Fed. R. Civ. P. 12 .......................................................................................................... 9

Fed. R. Civ. P. 56 .......................................................................................................... 8

## U.S. CONSTITUTION

U.S. Const. art. I, § 8...................................................................................... *passim*

U.S. Const. art. IV, § 3................................................................................... 10, 11, 16

U.S. Const. amend. X...................................................................................................... 11

U.S. Const. amend. XIII, § 1 ..................................................................................... 11, 14

U.S. Const. amend. XIV, § 1 ................................................................................. 2, 10, 11

## OTHER AUTHORITIES

Acceptance of Cessions, Dec. 23, 1921, *reprinted in* Am. Samoa Code (1973) ........................... 3

Am. Samoa Rev. Const. Art. I, § 3 ............................................................................... 4

Am. Samoa Rev. Const. Art. V, § 11 .................................................................................. 4

Black's Law Dictionary (10th ed. 2014) .......................................................................... 11

Br. in Opp'n to Cert. by Respondents Am. Samoa Gov't and the Office of Congresswoman
   Aumua Amata, No. 15-981 (U.S. May 11, 2016),
   http://www.scotusblog.com/wp-content/uploads/2016/06/15-981-American-Samoa.pdf ......... 5

Cession of Manu'a Islands, July 14, 1904, *reprinted in* Am. Samoa Code (1973) ....................... 3

Cession of Tutuila and Aunu'u, Apr. 17, 1900, *reprinted in* Am. Samoa Code (1973) ................ 3

Convention Between the United States and Denmark for Cession of the Danish West Indies,
   Aug. 4, 1916, U.S.-Den., 39 Stat. 1706 ................................................................... 18

The Federalist No. 43 (James Madison) ........................................................................ 23

Office of Insular Affairs, U.S. Dep't of the Interior, *American Samoa*,
   https://www.doi.gov/oia/islands/american-samoa ................................................... 4, 16

U.S. Dep't of the Interior, Order No. 3009 (Sept. 13, 1977),
   https://www.doi.gov/sites/doi.gov/files/migrated/oia/about/upload/Secretary-s-Order-3009-
   Elected-Governor-and-Lt-Governor-of-American-Samoa.pdf .................................... 4

U.S. Gen. Accounting Office, *U.S. Insular Areas: Application of the U.S. Constitution*,
   (Nov. 1997),
   http://www.gao.gov/archive/1998/og98005.pdf .................................................... 2, 3

U.S. House of Representatives, Directory of Representatives,
   http://www.house.gov/representatives ................................................................. 4

William McKinley, Exec. Order 125-A, Placing Certain Islands of the Samoan Group Under the
   Control of the Navy Department (Feb. 19, 1900),
   http://www.asbar.org/index.php?option=com_content&view=article&id=13683:executive-
   order-placing-samoa-under-the-u-s-navy&catid=112&Itemid=178 ........................... 3

## INTRODUCTION

This case presents a pure question of constitutional law: whether persons born in American Samoa, an unincorporated territory of the United States, are guaranteed birthright citizenship under the Citizenship Clause of the Fourteenth Amendment to the United States Constitution.   The answer to that question is no.   Although Congress may provide for birthright citizenship by statute—as it has for those born in the unincorporated territories of Guam, Puerto Rico, the U.S. Virgin Islands, and the Northern Mariana Islands—Congress has enacted no such legislation with respect to American Samoa.   Accordingly, Plaintiffs may only prevail if the Constitution *requires* birthright citizenship for anyone born in an unincorporated territory of the United States.   Such a novel holding would be contrary to the decisions of every court of appeals to have considered the question, inconsistent with over a century of historical practice by all three branches of the United States Government, and conflict with the strong objection of the local government of American Samoa.   The United States does not dispute Plaintiffs' well-documented assertion that the people of American Samoa have made remarkable contributions to the United States of America over the past century.   Nonetheless, as a matter of constitutional law, Plaintiffs have directed their grievance to the wrong branch of government.   Any remedy here must come from Congress, not the federal judiciary.

## BACKGROUND

The Citizenship Clause of the Fourteenth Amendment to the United States Constitution provides: "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside."   U.S. Const. amend.

1

XIV, § 1, cl. 1.  "Persons not born in the United States acquire citizenship by birth only as provided by Acts of Congress."  *Miller v. Albright*, 523 U.S. 420, 424 (1998).

Many people are United States citizens or United States nationals by virtue of Acts of Congress, rather than by operation of the Citizenship Clause.  Exercising its plenary authority over naturalization, *see* U.S. Const. art. I, § 8, cl. 4, Congress has conferred U.S. citizenship on children born to members of Indian Tribes, 8 U.S.C. § 1401(b), and on children born abroad to U.S. citizen parents when certain physical presence or residence requirements have been met, 8 U.S.C. § 1401(c)-(e) and (g), 1409; *see* 8 U.S.C. § 1403.

For United States territories, Congress has decided on a territory-by-territory basis whether, when, and under what circumstances persons born in the territory (or already living in the territory at the time of acquisition) become U.S. citizens or nationals.  Thus, Congress has, over time, conferred U.S. citizenship on persons born in (or already living in) several U.S. territories, including Puerto Rico, 8 U.S.C. § 1402; the U.S. Virgin Islands, 8 U.S.C. § 1406; Guam, 8 U.S.C. § 1407; the Northern Mariana Islands, Act of Mar. 24, 1976, Pub. L. No. 94-241, §§ 301, 303, 90 Stat. 263, 265-66 (48 U.S.C. § 1801 note); and Alaska and Hawaii before they became States, 8 U.S.C. §§ 1404, 1405.  Congress has decided that persons born in "an outlying possession of the United States"—currently defined as American Samoa and Swains Island (which is part of American Samoa)—"shall be nationals, but not citizens, of the United States at birth."  8 U.S.C. § 1408(1); *see id.* § 1101(a)(29); 48 U.S.C. § 1662.

American Samoa is a territory of the United States.  *See* U.S. Gen. Accounting Office, *U.S. Insular Areas: Application of the U.S. Constitution* 7-8 (Nov. 1997), http://www.gao.gov/archive/1998/og98005.pdf (U.S. Insular Areas).  It is comprised of several

2

islands in an archipelago located in the South Pacific between Hawaii and New Zealand.   *Id.* at 3, 22.   It became a territory of the United States in 1900, after Great Britain and Germany withdrew their claims to it, *see* Tripartite Convention of 1899, Dec. 2, 1899, Art. II, 31 Stat. 1879, and Samoan leaders ceded sovereignty over it to the United States, *see* Acceptance of Cessions, Dec. 23, 1921, *reprinted in* Am. Samoa Code, Historical Documents 12 (1973); Cession of Manu'a Islands, July 14, 1904, *reprinted in* Am. Samoa Code, Historical Documents 9-11 (1973); Cession of Tutuila and Aunu'u, Apr. 17, 1900, *reprinted in* Am. Samoa Code, Historical Documents 6-8 (1973); *see also* Act of Feb. 20, 1929, ch. 281, 45 Stat. 1253; 48 U.S.C. §§ 1661, 1662.

The legal documents by which the United States acquired American Samoa did not set out specific rules for governance of the territory and did not provide that the territory would be incorporated into the United States or placed on a path toward statehood.   Congress provided that the President or his designees shall administer American Samoa unless and until Congress provides otherwise.   *See* Act of Feb. 20, 1929, § (c), 45 Stat. 1253.   The President originally placed American Samoa under the authority of the Department of the Navy.   *See* William McKinley, Exec. Order 125-A, Placing Certain Islands of the Samoan Group Under the Control of the Navy Department   (Feb.   19,   1900),   http://www.asbar.org/index.php?option=com_content&view =article&id=13683:executive-order-placing-samoa-under-the-u-s-navy&catid=112&Itemid=178 (last visited June 8, 2018[2]).   In 1951, the President transferred that authority to the Department of the Interior, where it remains, *see* Exec. Order No. 10,264, 3 C.F.R. §§ 447-48 (Supp. 1951).   The Department of the Interior has worked with the people of American Samoa to adopt a constitution

---

[2] All websites cited in this brief were last visited on June 8, 2018.

3

and to provide for popular elections.  *See* Am. Samoa Rev. Const. Art. V, § 11 (noting that constitution became effective on July 1, 1967, following approval by a popular vote and by the Secretary of the Interior); U.S. Dep't of the Interior, Order No. 3009, at 1-3 (Sept. 13, 1977), (providing for elected governor and lieutenant governor), https://www.doi.gov /sites/doi.gov/files/migrated/oia/about/upload/Secretary-s-Order-3009-Elected-Governor-and-Lt-Governor-of-American-Samoa.pdf.

"Congress has broad latitude to develop innovative approaches to territorial governance." *Puerto Rico v. Sanchez Valle*, 136 S. Ct. 1863, 1876 (2016).   Today, American Samoa largely governs itself with respect to local affairs.  *See Tuaua v. United States*, 788 F.3d 300, 302 (D.C. Cir. 2015), *cert denied*, 136 S. Ct. 2461 (2016).   Although it remains subject to federal oversight, American Samoa has a popularly elected governor, lieutenant governor, and bicameral legislature, as well as an independent judiciary.  *See Tuaua v. United States*, 951 F. Supp. 2d. 88, 90 (D.D.C. 2013), *aff'd*, 788 F.3d 300 (D.C. Cir. 2015); *see also* Office of Insular Affairs, U.S. Dep't of the Interior, *American Samoa*, https://www. doi.gov/oia/islands/american-samoa (*American Samoa*). American Samoa also has a delegate in the United States House of Representatives.  *See* U.S. House of Representatives, Directory of Representatives, http://www.house.gov/representatives.

"At the same time, however, American Samoa has endeavored to preserve its traditional way of life known as *fa'a Samoa*," including its unique tradition of communal land ownership. *Tuaua*, 951 F. Supp. 2d at 91.   The constitution of American Samoa explicitly pledges to protect that practice, as well as "the Samoan way of life and language" more generally.   Am. Samoa Rev. Const. Art. I, § 3.   In recent litigation, the government of American Samoa and its delegate in Congress both contended that application of the Citizenship Clause to persons born in American

Samoa would have serious consequences for American Samoa's traditions and culture. *See* Br. in Opp'n to Cert. by Respondents Am. Samoa Gov't and the Office of Congresswoman Aumua Amata, No. 15-981 (U.S. May 11, 2016), *available at* http://www.scotusblog.com/wp-content/uploads/2016/06/15-981-American-Samoa.pdf; *see also* American Samoa's Mot. to Intervene, ECF No. 61, at 3 ("Establishing birthright citizenship by judicial fiat could have an unintended and potentially harmful impact upon American Samoa society.").

Plaintiffs are three individuals (John Fitisemanu, Pale Tuli, and Rosavita Tuli) who were born in American Samoa and now reside in Utah, and an advocacy organization of which they are members (the Southern Utah Pacific Islander Coalition). Compl., ECF No. 2, ¶¶ 7-10. Plaintiffs sued the United States of America, the Department of State, the Secretary of State (in his official capacity), and the Assistant Secretary of State for Consular Affairs (also in his official capacity), contending that the Fourteenth Amendment's Citizenship Clause applies to persons born in American Samoa, and so the Act of Congress designating individuals born in American Samoa as non-citizen nationals of the United States (8 U.S.C. § 1408) is unconstitutional, as well as the State Department's practice of implementing that federal statute by stamping passports of those born in American Samoa with an endorsement indicating that they are nationals, but not citizens, of the United States. Plaintiffs seek a declaratory judgment that "persons born in American Samoa are citizens of the United States by virtue of the Citizenship Clause" of the Fourteenth Amendment to the United States Constitution, as well as related injunctive relief. Compl. ¶ 6.

Shortly after filing their Complaint, Plaintiffs filed a motion for summary judgment. ECF No. 30. The Court then adopted the parties' joint proposed briefing schedule for Plaintiffs' motion for summary judgment and Defendants' cross-motion. ECF No. 42; *see also* ECF No. 58

(amending schedule).   The Government now moves to dismiss or, in the alternative, cross moves

for summary judgment, and also opposes Plaintiffs' motion for summary judgment.

**RESPONSE TO PLAINTIFFS' STATEMENT OF UNDISPUTED MATERIAL FACTS**

1.      Undisputed.

2.      Undisputed.

3.      Undisputed.

4.      Undisputed that as of March 30, 2018, Rex W. Tillerson was the Secretary of State.
The current Secretary of State is Michael R. Pompeo.

5.      Undisputed, with respect to the current Secretary of State, Michael R. Pompeo.

6.      Undisputed, with respect to the current Secretary of State, Michael R. Pompeo.
The referenced provision of the State Department's Foreign Affairs Manual speaks for itself.

7.      Undisputed.

8.      Undisputed, with respect to the current Secretary of State, Michael R. Pompeo.

9.      Undisputed.

10.      Disputed.  Individuals born in American Samoa may obtain full United States
citizenship (including from their date of birth) from sources of law other than the Citizenship
Clause of the Fourteenth Amendment.   The referenced provision of the State Department's
Foreign Affairs Manual speaks for itself.

11.      Disputed, to the extent the referenced "policy" is described inaccurately in
paragraph 10.   The referenced provision of the Immigration and Nationality Act speaks for itself.

12.      Undisputed, except to the extent that such individuals "fall within a statutory or
regulatory basis for denial," 7 F.A.M. § 1313(a), unrelated to their citizenship, nationality, or

identity.   The referenced provision of the State Department's Foreign Affairs Manual speaks for itself.

13.     Undisputed.   The referenced provision of the State Department's Foreign Affairs Manual speaks for itself.

14.     Undisputed, except to the extent that Plaintiffs characterize Endorsement Code 09 as a "disclaimer."

15.     Undisputed.

16.     Undisputed.

17.     Undisputed.

18.     Undisputed.

19.     Undisputed.

20.     Undisputed.

21.     Undisputed.

22.     Undisputed.

23.     Undisputed.

24.     Undisputed.   The referenced provision of the U.S. Code speaks for itself.

25.     Undisputed.

26.     Disputed to the extent that Plaintiffs have inaccurately described certain State Department policies in paragraphs 10 and 11.   Disputed to the extent that Plaintiffs may seek the rights, benefits, and privileges associated with United States citizenship through the naturalization process or from a source of law other than the Citizenship Clause of the Fourteenth Amendment.

Undisputed that Plaintiffs are currently unable to obtain such rights, benefits, and privileges by virtue of their birth in American Samoa.

27.     Disputed to the extent that Plaintiffs have inaccurately described certain State Department policies in paragraphs 10 and 11.   Disputed to the extent that Plaintiffs suggest that they are "citizens."   Defendants lack knowledge or information sufficient to form a belief about the truth of Plaintiffs' claims that they "feel discriminated against and branded as inferior," which is, in any event, not a material fact.

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient.   *Id.*   "In evaluating a Rule 12(b)(6) motion to dismiss, courts may consider not only the complaint itself, but also attached exhibits, and documents incorporated into the complaint by reference."   *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009) (internal citations omitted).

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   "Thus, not every factual dispute 'will properly preclude the entry of summary judgment'"; the dispute must be genuine and relate to material issues of fact."   *Dullmaier v. Xanterra Parks*

*& Resorts*, 883 F.3d 1278, 1283 (10th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).   When applying this standard, the Court must "view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party."   *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).

## ARGUMENT

As a unanimous panel of the D.C. Circuit recently held in rejecting the claim that Plaintiffs now bring in this Court, the Citizenship Clause does not apply to individuals born in the unincorporated and outlying territory of American Samoa.   That holding accords with Supreme Court precedent distinguishing unincorporated territories from "the United States" for purposes of determining the application of the Constitution, *see Downes v. Bidwell*, 182 U.S. 244 (1901), and with the decisions of other courts of appeals uniformly holding that the Citizenship Clause did not extend to the pre-independence Philippines, and that the Naturalization Clause does not extend to the Northern Mariana Islands.   And it is also consistent with the longstanding practice by which acquisition of citizenship in territories such as Puerto Rico, Guam, and the United States Virgin Islands has been treated by the political branches as a statutory, not a constitutional, right. Accordingly, Plaintiffs' claims should be dismissed, their motion for summary judgment should be denied, and final judgment should be entered in favor of the Government on all claims.[3]

---

[3] Because all of the relevant factual material is either included in the complaint, attached to the complaint as exhibits, or incorporated by reference into the complaint, the Government respectfully submits that dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) (and then denial of Plaintiffs' motion for summary judgment as moot) is the appropriate procedural resolution of this case.   In the alternative, however, this case may also be resolved (in either direction) based on the factual record now before the Court, by resolution of the parties'

9

I.   **THE TEXT AND STRUCTURE OF THE CONSTITUTION FORECLOSE PLAINTIFFS' INTERPRETATION OF THE CITIZENSHIP CLAUSE.**

As noted above, the Fourteenth Amendment's Citizenship Clause provides that "[a]ll persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside."   U.S. Const. amend. XIV, § 1, cl. 1. The question in this case is whether persons born in the United States territory of American Samoa are born "in the United States" within the meaning of this Clause.

As the courts of appeals have unanimously concluded with respect to unincorporated territories generally—and as the D.C. Circuit recently held with respect to American Samoa specifically, *see infra*, Section III—the Citizenship Clause does not extend birthright citizenship to those born in unincorporated territories (meaning territories that are not destined toward statehood).   The Clause extends citizenship to persons who are both "born or naturalized in the United States" and "subject to the jurisdiction thereof."   U.S. Const. amend. XIV, § 1, cl. 1.   By constitutional design, a U.S. territory is under the sovereignty of the United States, and Congress has plenary power to administer the territory.   *See* U.S. Const. art. IV, § 3, cl. 2 (Territory Clause); *Shively v. Bowlby*, 152 U.S. 1, 48 (1894).   Accordingly, persons born in the territories are "subject to the jurisdiction" of the United States.   *Cf. Elk v. Wilkins*, 112 U.S. 94, 99-103 (1884) (explaining that members of Indian Tribes did not obtain citizenship under the Citizenship Clause because Tribes are not "subject to the jurisdiction" of the United States in the relevant sense); *see also* 8 U.S.C. § 1101(22) (defining "national of the United States" as either "a citizen of the United States" or "a person who, though not a citizen of the United States, owes permanent allegiance to

_____

cross-motions for summary judgment, as there are no disputes over any material facts.

the United States").   But there remains another, prior question: whether U.S. territories are "in the United States" for purposes of the Clause.

The best reading of the Citizenship Clause is that U.S. territories are not "in the United States" within the meaning of the Clause because "in the United States" means in the 50 States and the District of Columbia.   At the time the Constitution was adopted, "the United States" consisted of the original 13 States, and the Constitution contemplated creation of a federal district to "become the Seat of the Government of the United States," to be located on land acquired by "by Cession of particular States."   U.S. Const. art. I, § 8, cl. 17; *see, e.g.*, Black's Law Dictionary 1769 (10th ed. 2014) (defining "United States of America" as a republic comprised of the 50 States and the District of Columbia).

The Constitution expressly distinguishes between States and territories of the United States.   The Constitution reserves to the States all powers "not delegated to the United States by the Constitution, nor prohibited by it to the States," U.S. Const. amend. X, thereby recognizing that States have "sovereignty concurrent with that of the Federal Government," *Tafflin v. Levitt*, 493 U.S. 455, 458 (1990).   Territories, on the other hand, are defined as lands "belonging to the United States" that are under the plenary authority of Congress.   U.S. Const. art. IV, § 3, cl. 2 (Territory Clause).   The Constitution itself therefore sets out a fundamental distinction between "the United States" and the territories belonging to the United States.

Further, while the Citizenship Clause of the Fourteenth Amendment is confined to individuals born "in the United States, *and* subject to the jurisdiction thereof," U.S. Const. amend. XIV, § 1, cl. 1 (emphasis added), the Thirteenth Amendment prohibits slavery "within the United States, *or* any place subject to their jurisdiction," U.S. Const. amend. XIII, § 1 (emphasis added).

11

The Thirteenth Amendment's broader language demonstrates that "there may be places subject to the jurisdiction of the United States, but which are not incorporated into it, and hence are not within the United States in the completest sense of those words." *Downes v. Bidwell*, 182 U.S. 244, 336-37 (1901) (White, J., concurring); *see also id.* at 251 (opinion of Brown, J.).[4]   At a minimum, this textual distinction underscores the soundness of the settled historical understanding that unincorporated territories, while subject to the jurisdiction of the United States, are not "in the United States" for purposes of the Citizenship Clause.

## II.   PLAINTIFFS' INTERPRETATION OF THE CITIZENSHIP CLAUSE IS INCONSISTENT WITH OVER A CENTURY OF HISTORICAL PRACTICE AND PRECEDENT.

The meaning of "in the United States" in the Citizenship Clause is further informed by the Supreme Court's decisions concerning application of the Constitution to U.S. territories, and over a century of historical practice reflecting a settled constitutional understanding that supports the government's interpretation of the Clause.   Plaintiffs' interpretation, by contrast, is at odds with this historical practice and precedent.

---

[4] Plaintiffs argue that "these words" in the Thirteenth Amendment are intended only to "encompass locations beyond the Nation's sovereign limits but nevertheless under U.S. control—such as vessels outside U.S. territorial waters, embassies abroad, and military installations on foreign soil—where Congress also sought to forbid slavery."   Pls.' Mot. for Summ. J. & Mem. in Support, ECF No. 30 ("Pls.' MSJ") at 18 (citing *In re Chung Fat*, 96 F. 202, 203-04 (D. Wash. 1899) (slavery aboard U.S. vessel would violate Thirteenth Amendment)).   But even accepting the premise that this constitutional language was drafted to achieve this modest goal, *Downes* supports the Government's reading.

**A.   Plaintiffs' interpretation is inconsistent with the *Insular Cases*.**

The Supreme Court has long recognized that the Constitution does not automatically apply in full to all territories of the United States.   In the *Insular Cases*[5]—a series of decisions about the application of the Constitution to territories the United States acquired at the turn of the 20th century, such as Puerto Rico, Guam, and the Philippines—the Supreme Court explained that the Constitution has more limited application in "unincorporated Territories" that are not intended for statehood than it does in States and "incorporated Territories surely destined for statehood." *Boumediene v. Bush*, 553 U.S. 723, 756-57 (2008).   In those cases, the Supreme Court set out a "general rule" that in an "unincorporated territory," the Constitution does not necessarily apply in full.   *United States v. Verdugo-Urquidez*, 494 U.S. 259, 268 (1990).   Such a rule has been necessary to provide the United States with flexibility in acquiring, governing, and relinquishing territories.   For example, the Court has explained that some territories (such as the former Spanish colonies) operated under civil-law systems quite unlike our own, and in some cases, like the Philippines, "a complete transformation of the prevailing legal culture would have been not only disruptive but also unnecessary, as the United States intended to grant independence to that Territory."   *Boumediene*, 553 U.S. at 757-58.

The *Insular Cases* invoked the distinction between incorporated and unincorporated territories both to determine the reach of constitutional provisions that are silent as to geographic scope, *see, e.g.*, *Dorr v. United States*, 195 U.S. 138, 144-49 (1904) (Sixth Amendment jury-trial

---

[5]   *Dorr v. United States*, 195 U.S. 138 (1904); *Hawaii v. Mankichi*, 190 U.S. 197 (1903); *Downes v. Bidwell*, *supra*; *Armstrong v. United States*, 182 U.S. 243 (1901); *Dooley v. United States*, 182 U.S. 222 (1901); *De Lima v. Bidwell*, 182 U.S. 1 (1901).

right), and to interpret constitutional provisions that specify a geographic reach, *see Downes*, 182 U.S. at 287 (opinion of Brown, J.) (Tax Uniformity Clause).   Here, the Citizenship Clause confers citizenship on those born "in the United States," and the Court's decision in *Downes* confirms that the language "in the United States" excludes unincorporated territories.

The particular question in *Downes* was whether the requirement that "all Duties, Imposts and Excises shall be uniform throughout the United States," U.S. Const. art. I, § 8, cl. 1, applies to Puerto Rico, a U.S. territory.   182 U.S. at 249 (opinion of Brown, J.).   The Court held that Puerto Rico is not part of "the United States" for purposes of that provision.   *Id.* at 263, 277-78, 287 (opinion of Brown, J.); *id.* at 341-42 (White, J., concurring); *id.* at 346 (Gray, J., concurring).[6] Justice Brown explained that, from a review of the Constitution's text and history, "it can nowhere be inferred that the territories were considered a part of the United States."   *Id.* at 250-51.   Both the Thirteenth and Fourteenth Amendments distinguish between places "within" or "in" the United States and places "subject to the jurisdiction" of the United States, U.S. Const. amends. XIII, § 1, XIV, § 1, cl. 1, and that textual distinction "show[s] that there may be places within the jurisdiction of the United States that are no part of the Union," 182 U.S. at 251 (opinion of Brown, J.); *see id.* at 336-37 (White, J., concurring).   Justice Brown also observed that, as a historical matter, Congress has needed the flexibility to make a variety of arrangements for the territories, especially

_____

[6] Although Justice Brown's opinion was designated an "[o]pinion of the Court," 182 U.S. at 247-87, a reporter's note indicates that no opinion commanded a majority of the Court, *see id.* at 244 n.1 (syllabus).   But all Justices in the majority agreed that it is for Congress to decide whether persons in newly acquired territories become U.S. citizens.   *See id.* at 279-80 (opinion of Brown, J.); *id.* at 306 (White, J., concurring); *id.* at 345-46 (Gray, J., concurring).

at the time they were acquired by the United States.   *Id.* at 250-56 (discussing the territories of Louisiana, Florida, Hawaii, and the Philippines).

As particularly relevant here, the Supreme Court recognized in *Downes* that the Constitution should not be read to automatically confer citizenship on inhabitants of U.S. territories.   Justice Brown explained that "the power to acquire territory by treaty implies, not only the power to govern such territory, but to prescribe upon what terms the United States will receive its inhabitants."   182 U.S. at 279; *see id.* at 306 (White, J., concurring); *id.* at 345-46 (Gray, J., concurring).   The right to acquire territory "could not be practically exercised if the result would be to endow the inhabitants with citizenship of the United States."   *Id.* at 306 (White, J., concurring).   The Justices in the majority thus recognized that when the United States acquires various territories, the decision to afford citizenship is to be made by Congress.   *Id.* at 280 (opinion of Brown, J.) ("In all these cases there is an implied denial of the right of the inhabitants to American citizenship until Congress by further action shall signify its assent thereto."); *see id.* at 306 (White, J., concurring); *id.* at 345-46 (Gray, J., concurring).

Plaintiffs suggest that this reasoning is inapplicable to American Samoa because it has been a territory of the United States for many years.   *See* Pls.' MSJ at 31-32, 35.   But the relevant point is that the Constitution grants Congress plenary power with respect to the territories and that the Supreme Court has recognized that reading the Constitution to mandate citizenship for residents of unincorporated territories would be a significant and unwarranted limitation on that power. And an unincorporated territory does not lose that status solely by passage of time.   *See, e.g.*, *Torres v. Puerto Rico*, 442 U.S. 465, 468-70 (1979) (recognizing Puerto Rico to be an unincorporated territory 80 years after its acquisition).

15

Plaintiffs (and some amici) also criticize the *Insular Cases* as "questionable Supreme Court precedent," Pls.' MSJ at 28, and argue that those cases "rest in significant part on outdated, indefensible racial biases," *id.* at 32.   But whatever can be said about the rhetoric of the *Insular Cases*, the Supreme Court has repeatedly (and recently) reaffirmed their core principle, which is that the political branches determine whether, when, and under what circumstances newly acquired territory is incorporated into the United States.   *See Boumediene*, 553 U.S. at 756-57; *Torres*, 442 U.S. at 469; *Reid v. Covert*, 354 U.S. 1, 8-9 (1957) (plurality opinion); *Balzac v. Porto Rico*, 258 U.S. 298, 312 (1922); *see also Tuaua*, 788 F.3d at 307 ("Although some aspects of the *Insular Cases*' analysis may now be deemed politically incorrect, the framework remains both applicable and of pragmatic use in assessing the applicability of rights to unincorporated territories.").

American Samoa is an unincorporated territory of the United States.   The agreements by which American Samoa was acquired did not contemplate that it would become a State, and Congress has not enacted any law that provides a path to statehood.[7]   Persons born in American Samoa therefore are not born "in the United States" for purposes of the Citizenship Clause.

### B.   Plaintiffs' interpretation is inconsistent with settled historical practice.

Settled historical practice also supports the conclusion that Congress, in exercising its plenary power to administer the territories, U.S. Const. art IV, § 3, cl. 2, and its broad authority over naturalization, U.S. Const. art. I, § 8, cl. 4, has the flexibility to determine whether and when

---

[7] The other U.S. territories (Puerto Rico, Guam, the Northern Mariana Islands, the U.S. Virgin Islands, and a number of small, mostly uninhabited outlying islands) also are unincorporated territories, because Congress has not currently provided a path to statehood for any of them.   *See* U.S. Insular Areas 6-10, 39-40.

the inhabitants of territories acquired by the United States become citizens or nationals.   *Downes*, 182 U.S. at 279-80 (opinion of Brown, J.).   For example, in 1898, when the United States acquired Puerto Rico and the Philippines from Spain by the Treaty of Paris, the Treaty provided that "[t]he civil rights and political status of the native inhabitants of the[se] territories . . . shall be determined by the Congress."   Treaty of Paris, Dec. 10, 1898, U.S.-Spain, Art. IX, 30 Stat. 1759.   Congress later extended U.S. citizenship to residents of Puerto Rico, *see* Organic Act of 1917 (Jones Act), ch. 145, § 5, 39 Stat. 953; *see also* Nationality Act of 1940, § 202, 54 Stat. 1139, but it provided that residents of the Philippines would be "citizens of the Philippine Islands," rather than citizens of the United States, Autonomy Act, ch. 416, § 2, 39 Stat. 546; *see Barber v. Gonzales*, 347 U.S. 637, 639 n.1 (1954).

As the Supreme Court has recognized, it was important for Congress to have the authority to make different arrangements for these territories, particularly because a territory (such as the Philippines) may not permanently remain under the sovereignty of the United States.   *See Boumediene*, 553 U.S. at 757-58; *see also Downes*, 182 U.S. at 318 (White, J., concurring).   And as the D.C. Circuit recognized in *Tuaua*, there would be "vast practical consequences" if the Citizenship Clause now were applied retroactively to unincorporated territories, including that such a development would raise questions about "the United States citizenship status of persons born in the Philippines during the territorial period," and "potentially their children through operation of statute."   *Tuaua*, 788 F.3d at 305 n.6.

Similarly, although the United States acquired Guam in 1898, *see* Treaty of Paris, Art. II, 30 Stat. 1755, Congress did not extend citizenship based on birth in Guam until 1950, *see* Organic Act of Guam, ch. 512, § 4, 64 Stat. 384-85.   The United States acquired the U.S. Virgin Islands

17

in 1917, *see* Convention Between the United States and Denmark for Cession of the Danish West Indies, Aug. 4, 1916, U.S.-Den., 39 Stat. 1706, but Congress did not extend citizenship based on birth there until 1927, and only under certain conditions, *see* Act of Feb. 25, 1927, ch. 192, 44 Stat. 1234.

The "years of past practice in which territorial citizenship has been treated as a statutory, and not a constitutional, right," *Tuaua*, 788 F.3d at 308 n.7, confirms that the Citizenship Clause does not apply to American Samoa.  Congress has long understood that it has the authority to decide whether and when to deem residents of U.S. territories (particularly residents of unincorporated territories) to be U.S. citizens or nationals, and Congress has exercised that authority to fashion rules for individual territories based on their particular characteristics and political futures.  *Downes*, 182 U.S. at 251-58, 267-70 (opinion of Brown, J.).  Congress's longstanding practice provides strong evidence that the Citizenship Clause was not intended to override Congress's plenary powers with respect to the territories—at least with respect to unincorporated territories like American Samoa.  *See Jackman v. Rosenbaum Co.*, 260 U.S. 22, 31 (1922) (Holmes, J.) ("If a thing has been practiced for two hundred years by common consent, it will need a strong case for the Fourteenth Amendment to affect it."); *Tuaua*, 788 F.3d at 308 n.7 ("[N]o one acquires a vested or protected right in violation of the Constitution by long use. . . . Yet an unbroken practice . . . openly [conducted] . . . by affirmative state action . . . is not something to be lightly cast aside.")) (quoting *Walz v. Tax Comm'n of City of New York*, 397 U.S. 664, 678 (1970).

III.    **EVERY COURT OF APPEALS TO CONSIDER THE QUESTION HAS AGREED THAT UNINCORPORATED TERRITORIES ARE NOT "IN THE UNITED STATES" FOR PURPOSES OF THE CITIZENSHIP CLAUSE.**

Courts have consistently rejected the claims advanced by Plaintiffs here.   To begin, in a nearly identical case filed in 2012 in the District of Columbia, the district court granted the Government's motion to dismiss for failure to state a claim.   *Tuaua v. United States*, 951 F. Supp. 2d 88, 98 (D.D.C. 2013) ("To date, Congress has not seen fit to bestow birthright citizenship upon American Samoa, and in accordance with the law, this Court must and will respect that choice."), *aff'd*, 788 F.3d 300 (D.C. Cir. 2015).   The *Tuaua* Plaintiffs then appealed to the D.C. Circuit, which affirmed the district court's dismissal order in a unanimous opinion.   *See* 788 F.3d at 371 ("[T]he Citizenship Clause does not extend birthright citizenship to those born in American Samoa.").   The *Tuaua* plaintiffs then filed a petition for rehearing en banc, which was denied without any judge calling for a vote.   *Tuaua v. United States*, No. 13-5272 (D.C. Cir. Oct. 2, 2015) (en banc) (per curiam).   Finally, the *Tuaua* plaintiffs filed a petition for a writ of certiorari with the Supreme Court, which was denied without any noted dissent.   *Tuaua v. United States*, 136 S. Ct. 2461 (2016).

Like the D.C. Circuit did in *Tuaua* with respect to American Samoa, every other court of appeals that has considered the question has held that the Citizenship Clause does not apply to unincorporated territories.   *See Valmonte v. INS*, 136 F.3d 914, 917-920 (2d Cir. 1998) (holding that the Citizenship Clause does not apply to individuals born in the Philippines while it was a U.S. territory), *cert. denied*, 525 U.S. 1024 (1998); *Lacap v. INS*, 138 F.3d 518, 519 (3d Cir. 1998) (per curiam) (same); *Nolos v. Holder*, 611 F.3d 279, 282-84 (5th Cir. 2010) (per curiam) (same); *Rabang v. INS*, 35 F.3d 1449, 1451-1453 (9th Cir. 1994) (same), *cert. denied*, 515 U.S. 1130

(1995); *Licudine v. Winter*, 603 F. Supp. 2d 129, 135 (D.D.C. 2009) (same); *see also Eche v. Holder*, 694 F.3d 1026, 1027-28, 1030-31 (9th Cir. 2012) (construing "the United States" in the Naturalization Clause, U.S. Const. art. I, § 8, cl. 4, not to apply to the Northern Mariana Islands because "federal courts have repeatedly construed similar and even identical language in other clauses to include states and incorporated territories, but not unincorporated territories"), *cert. denied*, 570 U.S. 904 (2013).

Plaintiffs assert in a footnote that "[t]he constitutional questions of citizenship by birth in a *current* U.S. territory like American Samoa are fundamentally different from those of birth in a *former* U.S. territory like the Philippines." Pls.' MSJ at 28 n.3. But they offer no explanation as to *why* that would be so, given that the pre-independence Philippines was also an unincorporated territory, and none of the prior litigation involving application of birthright citizenship to those born in the Philippines during the territorial period—including cases decided after the Philippines gained independence—suggest that any such distinction is relevant. As the D.C. Circuit put it, "[d]espite [the *Tuaua* plaintiffs] contentions to the contrary, there is no material distinction between nationals born in American Samoa and those born in the Philippines prior to its independence in 1946." *Tuaua*, 788 F.3d at 305 n.6 (rejecting the *Tuaua* plaintiffs' "attempt[s] to distinguish the Philippines context because that territory was acquired via conquest and because it was always the purpose of the United States to eventually withdraw its sovereignty"). Accordingly, "[t]he extension of citizenship to the American Samoan people would necessarily implicate the United States citizenship status of persons born in the Philippines during the territorial period—and potentially their children through operation of statute," *id.*, and would

immediately bring this Court into conflict with the unanimous consensus in the courts of appeals rejecting such claims.

## IV.    PLAINTIFFS' REMAINING ARGUMENTS LACK MERIT.

1.   Notwithstanding the weight of authority to the contrary, Plaintiffs suggest that the Supreme Court has in fact recognized that the Citizenship Clause applies in U.S. territories.   *See* Pls.' MSJ at 23-27.   They are mistaken.   To the contrary, as explained above, the Supreme Court recognized in *Downes* that application of the Clause to the territories would substantially impair Congress's constitutional authority to administer the territories, especially newly acquired territories.   *See supra*, Section II.A.   And the Supreme Court has continued to assume that persons born in U.S. territories obtain citizenship only by Act of Congress, not through the Constitution.   *Barber*, 347 U.S. at 639 n.1 ("Persons born in the Philippines during this period were American nationals entitled to the protection of the United States and conversely owing permanent allegiance to the United States.   They could not be excluded from this country under a general statute relating to the exclusion of 'aliens.'   But, until 1946, neither could they become United States citizens.") (internal citations omitted); *see Miller v. Albright*, 523 U.S. 420, 467 n.2 (1998) (Ginsburg, J., dissenting) ("Nationality and citizenship are not entirely synonymous; one can be a national of the United States and yet not a citizen.   8 U.S.C. § 1101(a)(22).   The distinction has little practical impact today, however, for the only remaining noncitizen nationals are residents of American Samoa and Swains Island."); *see also Rabang v. Boyd*, 353 U.S. 427, 432 (1957) (reiterating Congress's power to "prescribe upon what terms the United States will receive [a territory's] inhabitants, and what their status shall be" (citation omitted)).

21

Weighed against all this, Plaintiffs primarily rely (*see* Pls.' MSJ at 24-27) on a case that pre-dates the *Insular Cases*, *United States v. Wong Kim Ark*, 169 U.S. 649 (1898), where the Supreme Court held that the Citizenship Clause conferred citizenship at birth on a child born in California whose parents were citizens of China. *Id.* at 705.  But it was undisputed that the plaintiff in *Wong Kim Ark* was born in the United States because he was born in the State of California.  *See* 169 U.S. at 652.  As a result, the Court had no occasion to consider whether the Citizenship Clause applies to unincorporated U.S. territories.  The Court explained that the Constitution generally premises citizenship on place of birth, rather than citizenship of the child's parents, *see id.* at 655-705, but that discussion does not establish that a person born in an unincorporated territory is covered by the Citizenship Clause, because that question simply was not before the Supreme Court, as several courts of appeals have recognized.  *See Valmonte*, 136 F.3d at 920 ("The question of the Fourteenth Amendment's territorial scope was not before the Court in *Wong Kim Ark* or *Inglis* and we will not construe the Court's statements in either case as establishing the citizenship principle that a person born in the outlying territories of the United States is a United States citizen under the Fourteenth Amendment."); *Rabang*, 35 F.3d at 1454 ("There is no indication that the Court in *Wong Kim Ark* and *Inglis* would have used such broad language had it been faced with the facts of the case before us.  *Wong Kim Ark* involved a person born in San Francisco, California.").  For the same reason, Plaintiffs' reliance (Pls.' MSJ at 23) on language in the *Slaughter-House Cases*, 83 U.S. (16 Wall.) 36 (1872), is misplaced.  As in *Wong Kim Ark*, the Supreme Court in the *Slaughter-House Cases*—cases addressed to "the distinction between citizenship of the United States and citizenship of a State" for purposes of the Privileges or Immunities Clause of the Fourteenth Amendment, *id.* at 73-74—did not purport to

22

decide the geographic scope of the Citizenship Clause.   And the Supreme Court certainly did not

purport to address application of the Citizenship Clause to unincorporated territories (in a case

about the constitutionality of laws enacted by the State of Louisiana to regulate local butchers).

*See generally id.*

Plaintiffs also rely (Pls.' MSJ at 27) on *Loughborough v. Blake*, 18 U.S. (5 Wheat.) 317

(1820), which held—also before the *Insular Cases*—that the application of the Tax Uniformity

Clause "throughout the United States" includes the District of Columbia.   *Id.* at 319.   But as was

later explained in *Downes*, *Loughborough* should not be read to support the proposition that an

unincorporated U.S. territory must be considered part of "the United States" under the

Constitution.   *See Downes*, 182 U.S at 260-61 (opinion of Brown, J.); *id.* at 292-93 (White, J.,

concurring).   And the District of Columbia, unlike the unincorporated territory of American

Samoa, has a unique constitutional status of its own, having been carved from land that used to be

a part of two of the original thirteen states to serve as the constitutionally designated seat of the

federal government.   *See Phillips v. Payne*, 92 U.S. 130, 131 (1875); U.S. Const. art. I, § 8, cl. 17;

*see also* THE FEDERALIST No. 43 (James Madison) (discussing "[t]he indispensable necessity of

complete authority at the seat of government").[8]

**2.**   Plaintiffs also cite (Pls.' MSJ at 21-22) statements of individual legislators from the

time of the Fourteenth Amendment's ratification.   But as the D.C. Circuit noted in *Tuaua*, the

---

[8] Even if Plaintiffs had correctly interpreted these cases, there is no question that all of the statements in question are dicta.   Plaintiffs argue that even Supreme Court dicta binds this Court, *see* Pls.' MSJ at 27, but that is not the case where, as here, that any such dicta is "enfeebled by later statements" from the Supreme Court that are more directly applicable.   *Bonidy v. U.S. Postal Serv.*, 790 F.3d 1121, 1125 (10th Cir. 2015).

background to the Fourteenth Amendment "contains many statements from which conflicting inferences can be drawn," *Tuaua*, 788 F.3d at 304 (quoting *Afroyim v. Rusk*, 387 U.S. 253, 267 (1967)), and "scattered statements" from three legislators "are not impressive legislative history" and cannot determine the meaning of the Clause, *id.* (quoting *Garcia v. United States*, 469 U.S. 70, 78 (1984)).   And whatever the import of those statements with respect to territories that were destined for statehood, they do not address the application of the Constitution to unincorporated territories, because the United States had no such territories at the time.

3.   Plaintiffs also argue that "[p]rior to American Independence it was 'universally admitted . . . that all persons within the colonies of North America, whilst subject to the crown of Great Britain, were natural born British subjects,'" Pls.' MSJ at 19 (quoting *Inglis v. Trustees of the Sailor's Snug Harbour in the City of New York*, 28 U.S. (3 Pet.) 99, 120 (1830)), and that "[a]fter the Revolution, nothing 'displaced in this country the fundamental rule of citizenship by birth within its sovereignty.'"   *Id.* (quoting *Wong Kim Ark*, 169 U.S. at 658-63, 674 (discussing *jus soli* citizenship)).   But even accepting that historical understanding, it simply does not address whether an unincorporated territory like American Samoa is "in the United States" for purposes of the Fourteenth Amendment's Citizenship Clause.   And, to the extent plaintiffs intend to suggest that birth within United States jurisdiction is sufficient, that argument is contrary to the Citizenship Clause's clear text, which sets out two independent requirements for birthright citizenship.   *See, e.g.*, *Nikoi v. Attorney Gen. of U.S.*, 939 F.2d 1065, 1066 (D.C. Cir. 1991) (holding that child of "foreign official with diplomatic immunity" was not entitled to birthright citizenship, despite being born "in the United States," because she was not born "subject to the jurisdiction thereof"); *Elk*,

24

112 U.S. at 109 ("The Indians in Oregon, not being born subject to the jurisdiction of the United States, were not born citizens thereof.") (internal citation omitted).

    **4.**  Finally, one additional factor counsels against accepting Plaintiffs' invitation to extend birthright citizenship to American Samoa by judicial decree: "[T]he American Samoan people have not formed a collective consensus in favor of United States citizenship." *Tuaua*, 788 F.3d at 309. Indeed, the democratically elected government of American Samoa and the territory's delegate in Congress have gone so far as to seek intervention in this litigation (as they did in *Tuaua*) to *oppose* application of the Citizenship Clause to American Samoa, fearing that "[e]stablishing birthright citizenship by judicial fiat could have an unintended and potentially harmful impact upon American Samoa society." American Samoa's Mot. to Intervene at 3. As the D.C. Circuit explained, many in American Samoa have been reluctant to seek citizenship because they fear it would upset "the traditional Samoan way of life," including the territory's longstanding "system of communal land ownership." *Tuaua*, 788 F.3d at 309. This is not to say that the wishes of the people of American Samoa are controlling with respect to the application of the Citizenship Clause. But the opposition of the government of American Samoa (which represents the people of American Samoa) counsels against reaching out to upset the settled constitutional understanding. *See id.* at 312 (declining to "mandate an irregular intrusion into the autonomy of Samoan democratic decision-making"). Indeed, the position of the American Samoan government underscores the importance of Congress's plenary power over the territories, which includes the power to foster self-determination in the territories.

    If a consensus view on birthright citizenship were to develop in American Samoa, the territory's delegate could bring the issue to Congress. By contrast, if the federal judiciary were

now to extend the Citizenship Clause to impose U.S. citizenship on all persons born in American Samoa, that would eliminate the opportunity for consideration and consensus by Congress, in consideration of the views of the people of American Samoa.   It also would disrupt the long-settled understanding with respect to all of the territories, including territories (like the Philippines) that are no longer under the sovereignty of the United States.   The appropriate course under our constitutional structure, which affords Congress broad authority over the administration of the territories, is to permit the people of American Samoa to continue to assess whether they wish to obtain U.S. citizenship, and perhaps to seek citizenship through an Act of Congress, rather than construing the Constitution to mandate U.S. citizenship based on the urging of the particular Plaintiffs who have filed this lawsuit.

## V.    THE COURT NEED NOT CONSIDER WHETHER BIRTHRIGHT CITIZENSHIP IS A FUNDAMENTAL RIGHT FOR PURPOSES OF THE TERRITORIAL INCORPORATION DOCTRINE.

Separate and apart from the meaning of the constitutional text "in the United States," *see supra*, Section II.A, the *Insular Cases* also set forth a framework, commonly referred to as territorial incorporation, by which courts have considered whether and to what extent specific constitutional rights apply in U.S. territories.   *See Posada de Puerto Rico Assocs. v. Tourism Co. of Puerto Rico*, 478 U.S. 328, 331 n.1 (1986) (discussing the application of the First Amendment, the Due Process Clause, and the Equal Protection Clause in Puerto Rico); *accord Boumediene*, 553 U.S. at 756 ("In a series of opinions later known as the *Insular Cases*, the Court addressed whether the Constitution, by its own force, applies in any territory that is not a State.") (emphasis added). The questions that have typically arisen in these territorial-incorporation cases are (1) whether a right is "fundamental," in that it falls within "the narrow category of rights and 'principles which

are the basis of *all* free government,'" *Tuaua*, 788 F.3d at 308 (quoting *Dorr v. United States*, 195 U.S. 138, 147 (1904)); and (2) whether the extension of that right to the territory in question "would prove 'impracticable and anomalous'" under the circumstances, *id.* at 309 (quoting *Reid v. Covert*, 354 U.S. 1, 74 (1957)) (Harlan, J., concurring).

This fundamental-rights analysis is simply inapplicable here, however, because the question before the Court is the meaning of the phrase "in the United States" in the Citizenship Clause itself—*i.e.*, the claims here are *already* addressed to the question of the geographic scope of particular constitutional text, and no additional analytical overlay regarding the propriety of extending specific constitutional rights to the territories is necessary.   If American Samoa is not "in the United States" for purposes of the Citizenship Clause, then Plaintiffs have no claim— regardless of whether birthright citizenship is considered a "fundamental right" in the abstract. *See Rabang*, 35 F.3d at 1453 n.8 (noting "the territorial scope of the phrase 'the United States' is a distinct inquiry from whether a constitutional provision should extend to a territory, and we rely on the *Insular Cases* only to determine the meaning of the phrase 'in the United States'") (internal citation omitted); *Valmonte*, 136 F.3d at 918 n.7 ("The phrase 'the United States' is an express territorial limitation on the scope of the Citizenship Clause.   Because we determine that the phrase 'the United States' did not include the Philippines during its status as a United States territory, we need not determine the application of the Citizenship Clause to the Philippines under the doctrine of territorial incorporation.").

In any event, in the alternative, birthright citizenship in an unincorporated territory is not a "fundamental right" for purposes of the *Insular Cases* framework of territorial incorporation.   As the D.C. Circuit explained in *Tuaua*, "'[f]undamental' has a distinct and narrow meaning in the

context of territorial rights."   788 F.3d at 308.   In claiming that birthright citizenship should be

deemed a "fundamental right," Plaintiffs rely on decisions striking down statutes that would have

expatriated individuals already deemed United States citizens.   Pls.' MSJ at 33-34.   But even if

those cases had addressed the right to citizenship at birth, labeling a right "fundamental" in one

context does not automatically render the right "fundamental" in the territorial context.   *See King*

*v. Morton*, 520 F.2d 1140, 1147 (D.C. Cir. 1975) (recognizing distinction between fundamental

rights "in states rather than unincorporated territories"); *see also Commonwealth of the N. Mariana*

*Islands v. Atalig*, 723 F.2d 682, 689 (9th Cir. 1984) (observing that "the doctrine of incorporation

for purposes of applying the Bill of Rights to the states serves one end while the doctrine of

territorial incorporation serves a related but distinctly different one").

Declaring birthright citizenship a fundamental right that applies anywhere the United States

exerts sovereignty would be contrary to the language of the Citizenship Clause itself, longstanding

practice, and Congress's recognized authority to determine the terms of acquisition of territories.[9]

It also would be inconsistent with the *Insular Cases* framework, which considers citizenship as

one factor in determining the application of other constitutional provisions in unincorporated

territories.   *See, e.g.*, *Boumediene*, 553 U.S. at 766 (citizenship considered as one of the "factors

---

[9] Indeed, the majority in *Downes* recognized that birthright citizenship was not a
fundamental right that applies automatically upon acquisition by the United States.   *See* 182 U.S.
at 280 (Brown, J., concurring) (recounting history of acquisitions in which "there is an implied
denial of the right of the inhabitants to American citizenship until Congress by further action shall
signify its assent thereto"); *id.* at 306 (White, J., concurring) ("To concede to the government of
the United States the right to acquire, and to strip it of all power to protect the birthright of its own
citizens and to provide for the well being of the acquired territory by such enactments as may in
view of its condition be essential, is, in effect, to say that the United States is helpless in the family
of nations, and does not possess that authority which has at all times been treated as an incident of
the right to acquire.").

. . . relevant in determining the reach of the Suspension Clause"); *see also Tuaua*, 788 F.3d at 308 ("We are unconvinced a right to be designated a citizen at birth under the *jus soli* tradition, rather than a non-citizen national, is a *sine qua non* for 'free government' or otherwise fundamental under the *Insular Cases*' constricted understanding of the term.") (emphasis added and citation omitted).

Finally, judicial application of the Citizenship Clause to American Samoa would be "impracticable and anomalous." *Tuaua*, 788 F.3d at 309-12.  As discussed above, extending birthright citizenship by judicial fiat to unincorporated territories would contravene Congress's authority to define the relationship between such territories and the United States.  And the D.C. Circuit correctly recognized that it would be "anomalous to impose citizenship over the objections of the American Samoan people themselves, as expressed through their democratically elected representatives."  *Id.* at 310; *see also id.* at 311 ("We can envision little that is more anomalous, under modern standards, than the forcible imposition of citizenship against the majoritarian will.").

## CONCLUSION

For the foregoing reasons, this action should be dismissed in its entirety for failure to state a claim upon which relief can be granted, and Plaintiffs' motion for summary judgment should then be denied as moot.   In the alternative, the Court should deny Plaintiffs' motion for summary judgment, and grant Defendants' cross-motion for summary judgment, on all claims.

DATE: June 8, 2018                              Respectfully submitted,

                                                CHAD A. READLER
                                                Acting Assistant Attorney General
                                                Civil Division

                                                JOHN W. HUBER
                                                United States Attorney

                                                ANTHONY J. COPPOLINO
                                                Deputy Director
                                                Federal Programs Branch

                                                */s/ Stephen M. Pezzi*
                                                STEPHEN M. PEZZI
                                                Trial Attorney
                                                United States Department of Justice
                                                Civil Division, Federal Programs Branch
                                                20 Massachusetts Avenue NW
                                                Washington, DC 20530
                                                Phone: (202) 305-8576
                                                Fax: (202) 616-8470
                                                Email: stephen.pezzi@usdoj.gov
                                                D.C. Bar No. 995500

                                                *Attorneys for the United States of America*