Frank D. Mylar (5116)
MYLAR LAW, P.C.
2494 Bengal Blvd.
Salt Lake City, Utah 84121
Phone: (801) 858-0700
FAX: (801) 858-0701
Mylar-Law@comcast.net

Christopher J. Hajec (*pro hac vice forthcoming*)
Mark S. Venezia (*pro hac vice forthcoming*)
Immigration Reform Law Institute
25 Massachusetts Ave., NW, Suite 335
Washington, D.C. 20001
Phone: (202) 232-5590
chajec@irli.org
mvenezia@irli.org

*Attorneys for Amicus Curiae the Immigration Reform Law Institute*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH,
### NORTHERN DIVISION

| | |
|---|---|
| JOHN FITISEMANU; PALE TULI; ROSAVITA TULI; and SOUTHERN UTAH PACIFIC ISLANDER COALITION;<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA; U.S. DEPARTMENT OF STATE; JOHN J. SULLIVAN, in his official capacity as Acting Secretary of the U.S. Department of State; and CARL C. RISCH, in his official capacity as Assistant Secretary of State for Consular Affairs;<br><br>Defendants. | Case No. 1:18-cv-00036-CW<br><br>**MEMORANDUM FOR AMICUS CURIAE THE IMMIGRATION REFORM LAW INSTITUTE IN SUPPORT OF NEITHER PARTY**<br><br>Judge Clark Waddoups |

**INTEREST OF AMICUS CURIAE**

The Immigration Reform Law Institute ("IRLI") is a non-profit 501(c)(3) public interest law firm dedicated to litigating immigration-related cases on behalf of, and in the interests of, United States citizens and legal permanent residents, and also to assisting courts in understanding and accurately applying federal immigration law. IRLI has litigated or filed *amicus curiae* briefs in a wide variety of cases. *See Wash. All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 74 F. Supp. 3d 247 (D.D.C. 2014); *Save Jobs USA v. U.S. Dep't of Homeland Sec.*, No. 16-5287 (D.C. Cir. filed Sept. 28, 2016); *Keller v. City of Fremont*, 719 F.3d 931 (8th Cir. 2013); and *Texas v. United States*, 787 F.3d 733 (5th Cir. 2015). IRLI is considered an expert in immigration law by the Board of Immigration Appeals, and has prepared *amicus* briefs for the Board, at the request of that body, for more than twenty years. *See*, *e.g.*, *Matter of Silva-Trevino*, 26 I. & N. Dec. 826 (B.I.A. 2016); *Matter of C-T-L-*, 25 I. & N. Dec. 341 (B.I.A. 2010); and *In re Q- T- -- M- T-*, 21 I. & N. Dec. 639 (B.I.A. 1996).

The parties have consented to the filing of this amicus curiae brief. No counsel for a party authored this brief in whole or in part and no person or entity, other than amicus curiae, its members, or its counsel, has contributed money that was intended to fund preparing or submitting the brief.

**SUMMARY OF THE ARGUMENT**

This case should be decided pursuant to two seminal Supreme Court cases construing the Citizenship Clause, *United States v. Wong Kim Ark*, 169 U.S. 649 (1898), and *Elk v. Wilkins*, 112 U.S. 94 (1884). Both cases were decided by the same justice, Justice Gray, and read carefully and properly, together stand for the following rule: if, and only if, one was born in the United

1

States to a United States resident who, at that time, both had permission to be in the United States and owed direct and immediate allegiance to the United States, one is a United States citizen by virtue of the Citizenship Clause.

This rule applies to plaintiffs' claim of birthright citizenship under the Fourteenth Amendment as follows. If, as the government argues, American Samoa is not in the United States for purposes of the Citizenship Clause, then, obviously, plaintiffs lack birthright citizenship because they were not born in the United States. If, as plaintiffs contend, American Samoa is in the United States for these purposes, then, obviously, plaintiffs' American Samoan parents were United States residents who had permission to be in the United States. According to the above rule, plaintiffs' birthright citizenship would then depend on the further question of whether plaintiffs' American Samoan parents owed direct and immediate allegiance to the United States.

Amicus takes no position on whether American Samoa is in the United States for Citizenship Clause purposes, nor on whether plaintiffs' American Samoan parents owed direct and immediate allegiance to the United States. It therefor takes no position on whether plaintiffs have birthright citizenship under the rule it derives.

**ARGUMENT**

I. Birthright Citizenship Depends On Birth In The United States To A United States Resident Who, At That Time, Both Had Permission To Be In The United States And Owed Direct And Immediate Allegiance To The United States.

*Wong Kim Ark* is often read as standing for, and indeed establishing, the widespread, even conventional, view that anyone born on American soil, at least to parents who are not members of a foreign country's diplomatic delegation, part of an invading force, or Indians born

2

in the allegiance of a tribe, enjoys birthright citizenship by virtue of the Fourteenth Amendment. In fact, however, a careful reading of *Wong Kim Ark*, combined with *Elk*, reveals its true holding to be, though broad, not as extreme as the conventional view: one is a birthright citizen if, and only if, one is born in the geographic confines of the United States to a United States resident who, at the time of one's birth, both had permission to be in the United States and owed direct and immediate allegiance to the United States.

      A.    *Birthright citizenship depends on direct and immediate allegiance to the United States.*

An issue in *Elk* was whether an Indian born in the United States in the allegiance of a tribe was a citizen at birth under that clause. The Court held that he was not, explaining:

> [The Citizenship Clause] contemplates two sources of citizenship, and two sources only: birth and naturalization. The persons declared to be citizens are "all persons born or naturalized in the United States, and subject to the jurisdiction thereof." The evident meaning of these last words is, not merely subject in some respect or degree to the jurisdiction of the United States, but completely subject to their political jurisdiction, and owing them direct and immediate allegiance. And the words relate to the time of birth in the one case, as they do to the time of naturalization in the other.

*Elk v. Wilkins*, 112 U.S. 94, 101-102 (1884). The Court held that the plaintiff did not owe direct and immediate allegiance to the United States at his birth, because he was born in the allegiance of a tribe. *See Wong Kim Ark*, 169 U.S. at 693 (noting the exception of "children of members of the Indian tribes owing direct allegiance to their several tribes" from Fourteenth Amendment birthright citizenship).

From the way the above passage is written, it might appear that the requirement of being "completely subject," that is, neither not subject at all nor "merely subject in some respect or degree," to the political jurisdiction of the United States and the requirement of "owing . . . direct

3

and immediate allegiance" to the United States are separate requirements.  But, because indirect and non-immediate allegiance is a lesser degree of allegiance than direct and immediate allegiance, it would seem that the latter requirement is ranged under the former, so that a lack of directness and immediacy in one's allegiance is a species of being subject, if at all, to the political jurisdiction of the United States in an incomplete way, that is, "merely subject in some respect or degree" to that jurisdiction.

On this reading, then, the Court held that the plaintiff, not owing direct and immediate allegiance at birth to the United States, was subject, at most, to the political jurisdiction of the United States to a less-than-complete degree, and thus was not "subject to the jurisdiction of the United States" at birth for purposes of the Citizenship Clause.

B.      *Birthright citizenship depends on permission to be in the United States.*

At issue in *Wong Kim Ark* was whether the United States-born son of Chinese subjects born while his parents were domiciled in the United States was a citizen at birth by virtue of the Citizenship Clause.  The Court found that he was, explaining:

> The Fourteenth Amendment affirms the ancient and fundamental rule of citizenship by birth within the territory, in the allegiance and under the protection of the country, including all children here born of resident aliens, with the exceptions or qualifications (as old as the rule itself) of children of foreign sovereigns or their ministers, or born on foreign public ships, or of enemies within and during a hostile occupation of part of our territory, and with the single additional exception of children of members of the Indian tribes owing direct allegiance to their several tribes.  The Amendment, in clear words and in manifest intent, includes the children born, within the territory of the United States, of all other persons, of whatever race or color, domiciled within the United States.  Every citizen or subject of another country, while domiciled here, is within the allegiance and the protection, and consequently subject to the jurisdiction, of the United States.  His allegiance to the United States is direct and immediate, and although but local and temporary, continuing only so long as he remains within our territory, is yet, in the words of Lord Coke, in Calvin's Case, 7 Rep. 6a, "strong enough to make a natural subject, for if he hath issue here, that issue is a

> natural-born subject;" and his child, as said by Mr. Binney in his essay before quoted, "if born in the country, is as much a citizen as the natural-born child of a citizen, and by operation of the same principle." It can hardly be denied that an alien is completely subject to the political jurisdiction of the country in which he resides – seeing that, as said by Mr. Webster, when Secretary of State, in his Report to the President on Thrasher's Case in 1851, and since repeated by this court, "independently of a residence with intention to continue such residence; independently of any domiciliation; independently of the taking of any oath of allegiance or of renouncing any former allegiance, it is well known that, by the public law, an alien, or a stranger born, for so long a time as he continues within the dominions of a foreign government, owes obedience to the laws of that government, and may be punished for treason, or other crimes, as a native-born subject might be, unless his case is varied by some treaty stipulations." Ex. Doc. H.R. No. 10, 1st sess. 32d Congress, p. 4; 6 Webster's Works, 526; United States v. Carlisle, 16 Wall. 147, 155; Calvin's Case, 7 Rep. 6a; Ellesmere on Postnati, 63; 1 Hale P.C. 62; 4 Bl. Com. 74, 92.

*Wong Kim Ark*, 169 U.S. at 693-94. To the above principles the Court added an important qualification:

> Chinese persons, born out of the United States, remaining subjects of the Emperor of China, and not having become citizens of the United States, are entitled to the protection of and owe allegiance to the United States, *so long as they are permitted by the United States to reside here*; and are 'subject to the jurisdiction thereof,' in the same sense as all other aliens residing in the United States.

*Id.* at 694 (citing, *inter alia*, *Fong Yue Ting v. United States*, 149 U.S. 698 (1893)) (emphasis added).

Thus, Justice Gray distinguished the plaintiff in *Wong Kim Ark* from the plaintiff in *Elk* by holding that, unlike the allegiance of tribal Indians, the allegiance of foreigners living in the United States, regardless of race or color, was not indirect and non-immediate, but, rather, all those "resident" in or "domiciled" in the United States were, as long as they were permitted to stay in the country, "within the allegiance and protection" of the United States to the same degree as citizens.

To ignore the qualification the Court made above, and not to regard the Court as holding

5

permission to be in the country to be a prerequisite for being under the jurisdiction of the United States for Citizenship Clause purposes, would make nonsense of the argument the Court gave for its judgment, especially according to its own precedents. For example, the Court would then have held that those domiciled within the country without permission to be here at all were within the allegiance and protection of the United States. Nothing could be further from the truth; an illegal alien, subject to apprehension, detention, and removal at all times, is hardly within the "protection" of the United States, as the phrase "allegiance and protection" has always been understood. *See, e.g., Minor v. Happersett*, 88 U.S. 162, 165-66 (1874) ("The very idea of a political community, such as a nation is, implies an association of persons for the promotion of their general welfare. Each one of the persons associated becomes a member of the nation formed by the association. He owes it allegiance and is entitled to its protection. Allegiance and protection are, in this connection, reciprocal obligations. The one is a compensation for the other; allegiance for protection and protection for allegiance."); *State v. Lyon*, 1 N.J.L. 462, 464 (1789) ("This is a prosecution at the suit of the state brought on the complaint of one of its citizens illegally deprived of his liberty. In cases of this kind the state is bound to protect the rights of all who are within its dominion, and fulfil the duties which are imposed by the social contract. The obligations of allegiance and protection are reciprocal. Whenever, therefore, an individual is deprived of his freedom, the state is bound to interfere to assist in extricating him from his confinement").

That illegal aliens are outside of the protection of the United States was well understood when *Wong Kim Ark* was decided. Indeed, Justice Gray had held as much in *Fong Yue Ting*, which he cited in *Wong Kim Ark* in support of his qualification:

> Chinese laborers, . . . like all other aliens residing in the United States for a shorter or longer time, are entitled, so long as they are permitted by the government of the United States to remain in the country, to the safeguards of the Constitution, and to the protection of the laws, in regard to their rights of person of property, and to their civil and criminal responsibility. But they continue to be aliens, having taken no steps towards becoming citizens, and incapable of becoming such under the naturalization laws; and therefore, remain subject to the power of Congress to expel them, or to order them to be removed and deported from the country, whenever, in its judgment their removal is necessary or expedient for the public interest.

*Fong Yue Ting*, 149 U.S. at 724.

True, illegal aliens are "within [the] jurisdiction" of a state, and thus entitled to the equal protection of a state's laws, according to current precedent, but that is not inconsistent with their being liable to deportation. *Plyler v. Doe*, 457 U.S. 202, 215 (1982). This merely geographical sense of "jurisdiction" is far from the complete jurisdiction the *Elk* and *Wong Kim Ark* Courts held was required in the Citizenship Clause. And, though it is also true that the Court in *Wong Kim Ark* stated that "jurisdiction" had a unitary meaning in the Fourteenth Amendment, 169 U.S. at 687, that "jurisdiction" for purposes of the Equal Protection Clause was later held to be merely geographical does not alter *Wong Kim Ark's* holding that an alien, to be completely subject to the jurisdiction of the United States under the Citizenship Clause, must be permitted to be in the country. Even today, illegal aliens, subject to apprehension and removal at all times, surely are not within the "allegiance and protection" of the United States in any sense full enough to make them completely subject to the political jurisdiction of the United States, as required in *Elk*. In any event, in *Plyler*, the Supreme Court did not overrule *Wong Kim Ark*, and no other court may do so. *See, e.g., Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case

7

which directly controls, leaving to this Court the prerogative of overruling its own decisions.").

      C.     *Birthright citizenship depends on parental residence in the United States.*

As shown above, the *Wong Kim Ark* Court held that United States residents and those domiciled in the United States were completely subject to the jurisdiction of the United States. Despite its reliance on English common law, the Court never stated that all persons physically present in the country (with permission) were completely subject to its jurisdiction. Indeed, after recounting the English common-law tradition holding that children even of temporary visitors, if born on English soil, were subjects, and stating that this tradition was embodied in the Citizenship Clause, the Court stated how and to what extent it was embodied in these words, quoted above:

> The Fourteenth Amendment affirms the ancient and fundamental rule of citizenship by birth within the territory, in the allegiance and under the protection of the country, including all children here born of resident aliens, with the exceptions or qualifications (as old as the rule itself) of children of foreign sovereigns or their ministers, or born on foreign public ships, or of enemies within and during a hostile occupation of part of our territory, and with the single additional exception of children of members of the Indian tribes owing direct allegiance to their several tribes.

*Wong Kim Ark*, 169 U.S. at 693. It is a natural reading of this passage that the Fourteenth Amendment "affirms" this rule to the extent of "including" the children of "resident aliens" in "citizenship by birth," and only to that extent. Certainly, the Court did not reach any broader holding than that the children of resident aliens (who had permission to be in the country) were included in birthright citizenship under the Fourteenth Amendment (subject, of course, to the listed exceptions).

Residence is usually defined as "bodily presence as an inhabitant in a given place." Black's Law Dictionary 1310 (7th ed. 1999). And "inhabit" is defined as "to occupy

8

permanently or habitually as a residence." *Id.* at 786. This concept of residence, though amorphous, appears to be that of the *Wong Kim Ark* Court (which, through approving quotation, speaks of "residence with the intention to continue such residence," 169 U.S. at 693, a use that would make "residence" distinct from and broader than "domicile"), and seems at least clear enough to exclude the children of mere tourists from birthright citizenship under the Citizenship Clause. It would not appear to exclude, however, the children of those who hold longer-term visas, or the children of lawful permanent residents.

II.   This Court Should Apply The Rule Of *Elk* and *Wong Kim Ark* To This Case.

*Elk* and *Wong Kim Ark* have not been overruled by the Supreme Court, and no other court may do so. As interpreted above, they apply to this case, in outline, as follows:

If, as the government contends, American Samoa is not in the United States for purposes of the Citizenship Clause, plaintiffs, who were born in American Samoa to American Samoan parents, obviously do not have birthright citizenship under that clause because they were not born in the United States. If American Samoa is in the United States for Citizenship Clause purposes, then plaintiffs have birthright citizenship if their American Samoan parents were, at their birth, United States residents with permission to be in the United States, as they obviously were, and owed direct and immediate allegiance to the United States. Since *amicus* takes no position on the questions of whether American Samoa is in the United States for Citizenship Clause purposes and whether plaintiffs' American Samoan parents owed direct and immediate allegiance to the United States, it takes no position on whether plaintiffs are birthright citizens under the Constitution.

## CONCLUSION

For the foregoing reasons, this Court should apply the rule derived herein from *Elk* and *Wong Kim Ark* to the instant case.

Dated:  June 29, 2018                                         Respectfully submitted,


*/s/ Frank D. Mylar*
Frank D. Mylar
Attorney for Amicus: Immigration Reform Law Institute


/s/ Christopher J. Hajec
Christopher J. Hajec (*pro hac vice forthcoming*)
Mark S. Venezia (*pro hac vice forthcoming*)
Immigration Reform Law Institute
25 Massachusetts Ave., NW Suite 335
Washington, D.C. 20001
Phone: (202) 232-5590
chajec@irli.org
mvenezia@irli.org

**CERTIFICATE OF SERVICE**

I hereby certify that on June 29, 2018, the foregoing was served by filing a copy using the Court's ECF filing system, which will send notice of the filing to all counsel of record.

/s/ *Frank D. Mylar*